

```
IN THE UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF TEXAS
         FORT WORTH DIVISION
```

IN RE: § 
LIFE PARTNERS HOLDINGS, INC., § Case No. 15-40289-RFN-11
 § Chapter 11
Debtor, §
_____ §
 §
LIFE PARTNERS CREDITORS' TRUST § Adversary No. 16-04038-rfn
AND ALAN M. JACOBS, AS TRUSTEE §
FOR LIFE PARTNERS CREDITORS' §
TRUST, §
 § District Court Case
 § No. 4:16-CV-300-A
VS § (Consolidated with
 § No. 4:17-CV-109-A
ROOT HOSPITALITY SOLUTIONS, LLC, § No. 4:17-CV-110-A
 § No. 4:17-CV-111-A)
Defendant. §

### MEMORANDUM OPINION AND ORDER

Came on for consideration multiple motions[1] filed by defendants in the above-captioned action seeking dismissal of claims made by plaintiffs, Life Partners Creditors' Trust and Alan M. Jacobs, as Trustee for Life Partners Creditors' Trust, in their amended complaint ("Complaint").[2] After having considered such motions, the allegations of the Complaint, plaintiffs'

---

[1] Several of the motions to dismiss were filed in Adversary Case No. 16-04038-rfn. See Adv. Docs. 753, 755, 757, 758, 759, 761, 763, 764, 767, 802, 803, 819, 837, and 839. Others were filed in this Case No. 4:16-CV-300-A after withdrawal of reference. See Docs. 17, 28 & 63.
 The "Adv. Doc. ___" references are to the numbers assigned to the referenced items on the bankruptcy court docket of Adversary No. 16-04038-rfn.
 The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in this consolidated Case No. 4:16-CV-300-A.

[2] Adv. Docs. 717 & 717-1 through 717-6.

omnibus responses to the motions,[3] replies of defendants,[4] the report and recommendation regarding such motions issued by the bankruptcy judge on November 27, 2017,[5] plaintiffs' objections to the report and recommendation,[6] the response to the objections,[7] and pertinent legal authorities, the court has concluded that all claims asserted by plaintiffs in the Complaint should be dismissed.[8] The court has also considered plaintiffs' "renewed" motion for leave to file second amended complaint[9] and the response thereto[10] and finds that the motion should be denied.

I.

Identities of the Parties and the Nature of the Claims

Plaintiffs are the Life Partners Creditors' Trust and Alan M. Jacobs, as trustee for that trust. The background that led to the creation of the trust, the designation of Alan M. Jacobs as

---

[3]Docs. 31, 32, 33, 66, & 67.

[4]Doc. 43.

[5]Doc. 93.

[6]Doc. 94.

[7]Doc. 101.

[8]The court is satisfied that dismissal may be granted on behalf of similarly-situated defendants who have not filed their own motions to dismiss. Taylor v. Acxiom Corp., 612 F.3d 325, 340 (5th Cir. 2010); Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981); Clinton Cmty. Hosp. Corp. v. S. Md. Med. Ctr., 374 F. Supp. 450, 453-54 (D. Md. 1974), aff'd, 510 F.2d 1037 (4th Cir. 1975).

[9]Doc. 97.

[10]Doc. 100.

2

trustee, and the contentions of plaintiffs concerning standing to make the claims they are asserting in this action are described in the Complaint. Adv. Doc. 717 at 11-13, ¶¶ 12-22. On those same subjects, the court makes reference to the Motion for Leave to: (1) Substitute Plaintiffs; and (2) Substitute Plaintiffs' Counsel filed February 14, 2017, in Adversary No. 16-04038-rfn, and its related February 16, 2017 Order. Adv. Docs. 710 and 712.

The defendants are collectively referred to in the Complaint as "Defendant Licensees." Adv. Doc. 717 at 10. Plaintiffs also say that defendants "are Life Partners' Referring Licensees," but then refer to "all Referring Licensees" as though defendants are a sub-group of them. Id. at 7, ¶ 4. They are listed in paragraph 9 of the Complaint, id. at 7-10, ¶ 9, and in the Complaint's Exhibit 1, id. at 7, n.2 and Adv. Doc. 717-1. The defendants thus named and listed are 340 in number.[11] Adv. Doc. 717-1 at 54.

Plaintiffs alleged in the Introduction of the Complaint that the "lawsuit seeks to recover commissions paid to the Defendants by [Life Partners]" and "damages suffered by investors who assigned their claims to the Creditors Trust." Adv. Doc. 717 at

---

[11]The Complaint indicates that its Exhibit 5 is a "copy of the annual total commissions received by the Defendant Licensees from 2008 through February, 2015." Adv. Doc. 717 at 30, ¶ 79. If plaintiffs accurately described Exhibit 5, 340 licensees would be named on it. Instead, Exhibit 5 appears to name over 825 licensees. Adv. Doc. 717-5.

5, ¶ 1. The claims asserted in the Complaint are characterized as either "Estate Claims," which are for "(1) fraudulent transfers under the Texas Uniform Fraudulent Transfer Act and 11 U.S.C. § 548; (2) breach of contract; and (3) preference claims under 11 U.S.C. § 547 and various disallowance claims under 11 U.S.C. §§ 502 and 510," or "Investor Claims" (or "Investor Assigned Claims"), which are for "(1) negligent misrepresentation; (2) breach of the Texas Securities Act based upon the sale of unregistered securities by unlicensed brokers; (3) for rescission pursuant to the TSA; and (4) for breach of fiduciary duty." Id. at 7, ¶¶ 5-7; 50-52. The assignments of those claims to plaintiffs were alleged to have been accomplished by, or pursuant to, the bankruptcy plan that was confirmed November 1, 2016, and became effective December 9, 2016. Id. at 12, ¶¶ 21-22.

The dollar amount of recovery plaintiffs are seeking from each of the defendants is not alleged in the Complaint unless the "Grand Totals" shown on the Complaint's Exhibit 5 relate to that subject. Adv. Doc. 717-5. The Complaint does say that "all Referring Licensees received in excess of $102 million in commissions." Adv. Doc. 717 at 7, ¶ 4. Confusingly, it also says that "the Defendant Licensees collectively received over $10.2 million in commissions and fees." Id. at 30, ¶79. In addition to

4

seeking recovery of unspecified amounts of monetary damages from defendants, id. at 53, ¶ 191, plaintiffs seek to impose a constructive trust against all licensees. Id. at 52, ¶¶ 187-88. While the allegations lack clarity, apparently the res of the trust is to be whatever money each of the defendants received as compensation for sales on behalf of Life Partners of fractional interests in life insurance policies to the thousands of investors that are identified in Exhibit 6 to the Complaint. Id. at 52; Adv. Doc. 717-6.

Plaintiffs described the Estate Claims they are asserting as follows:

Count 1 asserts actual fraudulent transfer claims against all Licensees shown on Exhibit 5 to the Complaint[12] based on section 24.005(a)(1) of the Texas Business & Commerce Code through 11 U.S.C. § 544. Adv. Doc. 717 at 42-44, ¶¶ 115-26.

Count 2 asserts constructive fraudulent transfer claims based on section 24.005(a)(2) of the Texas Business & Commerce Code through 11 U.S.C. § 544, again

---

[12]Exhibit 5 is the Complaint's exhibit that appears to name more than 825 persons in contrast to the 340 defendants named in the Complaint and in its Exhibit 1. Further, Exhibit 5 is described as "a true and correct copy of the annual total commissions received by the Defendant Licensees from 2008 through February, 2015." Adv. Doc. 717 at 30, ¶ 79. And, Count 1 seeks to avoid transfers made "in the form of fees and commissions," id., at 42, ¶ 116, but Exhibit 5 purports to list only commissions. The Complaint itself indicates that Referring Licensees, which appears to include defendants, did not receive fees. Id. at 34, ¶ 91.

5

brought against all Licensees shown on Exhibit 5. Id. at 45-46, ¶¶ 127-39.

Count 3 asserts actual fraudulent transfers against certain Licensees as contemplated by 11 U.S.C. § 548(a)(1)(A). Id. at 46-47 ¶¶ 140-44.

Count 4 asserts constructive fraudulent transfer claims against certain Licensees as contemplated by 11 U.S.C. § 548(a)(1)(B). Id. at 47, ¶¶ 145-52.

Count 5 asserts preference claims brought pursuant to 11 U.S.C. § 547 against certain Licensees shown on Exhibit 5. Id. at 47-48, ¶¶ 153-59.

Count 6 asserts claims against all Licensees for recovery of all avoided transfers as authorized by 11 U.S.C. § 550. Id. at 48, ¶¶ 160-62.

Count 7 asserts breach of contract claims against all Licensees. Id. at 48-49, ¶¶ 163-68. The court's understanding is that the breach of contract claims have been abandoned by plaintiffs, Doc. 31 at 9, ¶ 6; Doc. 66 at 9, ¶ 6.

Count 8 asserts equitable subordination claims by which plaintiffs seek to cause all claims of all Licensees to be equitably subordinated as contemplated by 11 U.S.C. § 510(c). Adv. Doc. 717 at 49, ¶¶ 169-72.

Count 9 seeks disallowance of all claims of all Licensees pursuant to the authority of 11 U.S.C. § 502(d). Id. at 50, ¶¶ 173-74.

The "Investor Assigned Claims" alleged by plaintiffs are as follows:

Count 10 asserts negligent misrepresentation claims against certain Licensees.[13] Id. at 50-51, ¶¶ 175-77.

Count 11 asserts claims against certain Licensees for breach of the Texas Securities Act. Id. at 51, ¶¶ 178-81.

Count 12 asserts claims of breach of fiduciary duty against certain Licensees. Id. at 51-52, ¶¶ 182-85.

In addition to the Estate Claims and Investor Assigned Claims mentioned above, plaintiffs make constructive trust claims, apparently against all Licensees, and a request for recovery of attorneys' fees and costs, again apparently against

---

[13]The headings in the Complaint for Counts 10, 11, and 12 all say that the counts are "Against Certain Licensees." Adv. Doc. 717 at 50-52. The nearest plaintiffs come to identifying the "Certain Licensees" is to say in a footnote to the Count 10 heading that "[a]ttached hereto as Exhibit 6 is a chart detailing the association and relationship between Licensees and Investors with regard to sales to specific investors." Id. at 50 n.23. The footnote reference is carried forward in the headings for Counts 11 and 12. Id. at 51 n.24 & n.25. Exhibit 6 to which the footnotes refer is a 344-page document listing what it describes as "Direct-Contact Licensees" and what appear to be thousands of names under the heading "Investor(s)." Adv. Doc. 717-6 at 1-344. The court has not been able to find anything in the Complaint that would explain why plaintiffs made the footnote references to Exhibit 6 in the headings for Counts 10, 11, and 12.

all Licensees, pursuant to the authority of section 24.013 of the Texas Business & Commerce Code.[14]  Id. at 52-53, ¶¶ 186-90.

II.

Main Grounds of the Motions to Dismiss

The grounds for dismissal most frequently asserted in the motions to dismiss are the failures of plaintiffs to satisfy the pleading standards of Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure.  Those grounds are discussed in a general way under this heading.

A.   The Rule 8(a)(2) Pleading Standards

Rule 7008 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") makes Rule 8 of the Federal Rules of Civil Procedure applicable to adversary proceedings.  Rule 8(a)(2) provides the standard of pleading for a complaint. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted).

---

[14]Plaintiffs also alleged entitlement to attorneys' fees and costs against licensees pursuant to section 38.001 of the Texas Civil Practice & Remedies Code by virtue of "the Licensee Defendants' breach of contract." Adv. Doc. 717 at 53, ¶ 190. The court considers that the section 38.001 claim for attorneys' fees and costs is no longer in the case because of plaintiffs' abandonment of their breach of contract claims.

Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Id. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In the testing of the adequacy of allegations under Rule 8(a), any reference by a plaintiff to defendants collectively in a complaint fails to satisfy the pleading standards of Rule 8(a).

9

See Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir. 1999); see also Searcy v. Knight (In re Am. Int'l Refinery), 402 B.R. 728, 738 (Bankr. W.D. La. 2008).

B. Rule 9(b) Standards for the Pleading of Claims Based on Fraud

Rule 7009 of the Bankruptcy Rules makes Rule 9(b) of the Federal Rules of Civil Procedure applicable to adversary proceedings. Rule 9(b) applies to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud. Frith v. Guardian Life Ins. Co. of Am., 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998). Claims alleging violations of the Texas Insurance Code and the Texas DTPA as well as those for fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b). Berry v. Indianapolis Life Ins. Co., 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009); Frith, 9 F. Supp. 2d at 742. In other words, all claims that have fraudulent conduct as an element are subject to the Rule 9(b) pleading standards. See Lone Star Fund V (U.S.), LP v. Barclays Bank PLC, 594 F.3d 383, 387 n.3 (5th Cir. 2010); see also Berry, 608 F. Supp. 2d at 799; In re Am. Int'l Refinery, 402 B.R. at 737; Ingalls v. Edgewater Private Equity Fund III, L.P., No. CIV.A. H-05-1392, 2005 WL 2647962, at *5 (S.D. Tex. Oct. 17, 2005); Tigue Inv. Co.,

Ltd. v. Chase Bank of Tex., N.A., No. 3:03-CV-2490-N, 2004 WL 3170789, at *1-*2 (N.D. Tex. Nov. 15, 2004).

Rule 9(b) requires "a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Herrmann Holdings Ltd. v. Lucent Techs. Inc., 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotation marks and citations omitted). To satisfy this requirement, plaintiffs must identify in the Complaint "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." See Tuchman v. DCS Commc'ns Corp., 14 F.3d 1061, 1068 (5th Cir. 1994) (internal quotation marks and brackets omitted); see also Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008).

In Ackerman v. Northwestern Mutual Life Insurance Co., 172 F.3d 467, 469 (7th Cir. 1999), the court provided an explanation of the defensible purpose of the heightened pleading requirement of Rule 9(b) by saying that it served "to force the plaintiff to do more than the usual investigation before filing his complaint." Id. The rationale behind Rule 9(b) is that "[f]raud charges can seriously damage a defendant's reputation,

11

even when the claim is ultimately defeated." Tique Inv. Co., Ltd., 2004 WL 3170789, at *2.

"General allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another cannot meet the requirements of Rule 9(b)." Id. at *1 (brackets, internal quotation marks, and citations omitted). See also Ingalls, 2005 WL 2647962, at *5 (quoting from Glaser v. Enzo Biochem, Inc., 303 F. Supp. 2d 724, 734 (E.D. Va. 2003)(that group pleading does not satisfy the who, what, where, why, and when required by 9(b), and that, instead, specificity is required for each defendant)); In re Am. Int'l Refinery, 402 B.R. at 738 (stating that "[t]he allegations in the Complaint that refer to Defendants collectively do not satisfy the heightened pleading standards of Rule 9(b)").

The Rule 9(b) standards apply as to each defendant even when hundreds of similarly situated defendants are named. See Ackerman, 172 F.3d at 470-71 (stating, in the context of a multiple-plaintiff lawsuit, that "[o]f course . . . compliance with Rule 9(b) is burdensome. But you cannot get around the requirements of the rule just by joining a lot of separate cases into one.").

III.

Analysis

A. Motions to Dismiss

By memorandum opinion and order signed November 17, 2017, in Case No. 4:16-CV-330-A, styled "Life Partners Creditors' Trust, et al. v. 72 Vest Level Three LLC, et al.," the court determined that plaintiffs' claims against a similar set of defendants should be dismissed without leave to replead. The court hereby incorporates by reference that memorandum opinion and order in its entirety. The bankruptcy judge, noting that the allegations in this action are substantively similar, has recommended that the motions to dismiss be granted as to all defendants and that plaintiffs not be allowed to replead. Doc. 93. The court agrees.

As before, for the sake of consistency, the court is giving all defendants the benefit of the court's rulings, even if the ruling is based on a ground not asserted by a defendant in a motion to dismiss. Plaintiffs have had ample opportunity to fully respond to all of the grounds that have led to the court's decision to dismiss all claims; and, it would be inappropriate to leave claims pending against some of the defendants who, because of lack of resources or for other reasons, were unable or failed to file a full motion to dismiss. The grounds the court has found meritorious apply to all defendants. See, supra, n.8.

Plaintiffs' objections to the bankruptcy judge's report and recommendation can be summarized as follows: Plaintiffs believed they had complied with the requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure. Doc. 94 at 2. They requested leave to amend during a hearing on June 12, 2017 in bankruptcy court. Id. at 4. And, their failure to amend is understandable in light of In re Westinghouse Secs. Litig., 90 F.3d 696 (3d Cir. 1996). Id. at 13.

What the record as recited by plaintiffs reflects is that they did not make a determination of whether their pleading was sufficient. Specifically, they did not seek leave to amend. Doc. 94 at 4. Rather, they sought an advisory opinion from the bankruptcy court as to the sufficiency of their pleading, saying that they could amend if the bankruptcy court wanted them to do so. Id. In other words, plaintiffs made a calculated decision to file an insufficiently pleaded amended complaint. Doc. 101.

Plaintiffs offer various excuses for failing to amend. One seems to be that defendants could have learned all they needed to know through discovery. Doc. 94 at 12, 14. Further, they seem to contend that defendants are bound by the jury's findings in the Pardo litigation. Id. at 8, 11 n. 4. Another is that each time the bankruptcy court told them to amend, they did. Id. at 12.

And, finally, they express a concern for the court, because a proper complaint would "overburden the court." Id. at 13.

None of plaintiffs' excuses is persuasive.[15] Plaintiffs made the choice to sue hundreds of defendants at a time. That they might have had to work a little harder to plead sufficiently is not an excuse for the failure to have done so.

B.  Motion for Leave to Amend

Plaintiffs have filed what they style as a "renewed" motion for leave to file second amended complaint. As noted, the exchange that took place at the June 12, 2017 hearing before the bankruptcy judge did not constitute a motion for leave to amend. Calling this a "renewed" motion is, at the very least, deceptive. The discussion at the hearing concerned only one particular exhibit and the filing of an amended complaint was not discussed. Rather, plaintiffs were apparently waiting for the court to tell them specifically what they must do even though they bore the burden of meeting the applicable pleading requirements.

More importantly, as noted in the response to the motion, the proposed amended complaint does not address all of the deficiencies noted in the 72 Vest Level Three case. Plaintiffs cite to their voluminous exhibits as providing the necessary

---

[15] Only one of the excuses is supported by any authority and, given plaintiffs' other representations, it is incredible that plaintiffs actually anguished over whether to provide further detail in their complaint. Rather, it appears that plaintiffs left that decision to the bankruptcy judge.

15

facts to support their claims, but the exhibits fall woefully short. Instead of supplying the who, what, when, where regarding fraud and fraud-based claims, the exhibits are just lists that appear to tell defendants what fractional interest was sold on what date.[16] Exhibit 2 says in every instance that the speaker was LPI, the place was Waco, and the "false statement" was a number that is assigned in Exhibit 8. Defendants are listed as suppliers of false statements, but even then one cannot identify the particular person alleged to have supplied false information because more than one person is often identified. In turn, Exhibit 8 is simply a list of medical summaries without any indication of what might be false about them. Plaintiffs say that the exhibits specify the negligence of each specific defendant in supplying the information and the reliance of each corresponding investor, Doc. 99 at 5, ¶ 17, but that information is not apparent.

Plaintiffs have had ample time in which to investigate potential claims and plead proper causes of action against defendants. For the reasons discussed herein, the court is denying their motion for leave to amend.

---

[16]The dates listed are highly confusing, given that the alleged false statement number may correspond to numerous different dates. Moreover, Exhibit 8 lists a "recorded on" date that is later by a number of years from the dates set forth in Exhibit 2.

## V.

## Order

For the reasons stated above, and in the memorandum opinion and order incorporated by reference, the court concludes that all claims asserted by plaintiffs against defendants in the above-captioned action should be dismissed with prejudice.

Therefore,

The court ORDERS that all claims and causes of action asserted by plaintiffs against defendants be, and are hereby, dismissed with prejudice.

The court further ORDERS that plaintiffs' motion for leave to file second amended complaint be, and is hereby, denied.

SIGNED January 3, 2018.

_____
JOHN McBRYDE
United States District Judge